UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRENDA LYNN S.,

                              Plaintiff,

v.                                                              5:19-cv-0999 (TWD)

COMM'R OF SOCIAL SEC.,

                              Defendant.

_____

APPERANCES:                                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC        JUSTIN M. GOLDSTEIN, ESQ.
  *Counsel for Plaintiff*                            KENNETH R. HILLER, ESQ.
6000 N. Bailey Ave., Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                    SEAN SANTEN, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury St.
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM- DECISION AND ORDER

Currently before the Court, in this Social Security action filed by Brenda S. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "Commissioner") pursuant to 42

U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for

judgment on the pleadings.  (Dkt. Nos. 13 and 14.)  For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is denied and Defendant's motion for judgment on the

pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits is

affirmed, and Plaintiff's Complaint is dismissed.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on September 29, 1972.  (Administrative Transcript[1] at 26.)  She has a high school degree, attended vocational school for computer systems operations, and obtained a real estate license in 2005 which has since expired.  T. at 75-76.  She has previously worked as a service repair coordinator, office assistant, self-service administrator, customer service representative, data analyst, accounts payable clerk, and project manager.  T. at 75-85.   She has not worked since May of 2016.  T. at 86.  Plaintiff alleges disability due to cerebral palsy, fibromyalgia, benign tremors, and osteoarthritis.  T. at 226.

On May 19, 2016, Plaintiff protectively filed a Title II application for disability insurance benefits and supplemental social security income alleging disability as of May 17, 2016.  T. at 191.  The claim was initially denied on August 1, 2016.  T. at 117.  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  T. at 123.  Plaintiff subsequently appeared at an administrative hearing through video teleconferencing before ALJ Melissa Hammock on April 11, 2018.  T. at 70-106.  Vocational expert Rachel Duchon also testified. T. at 100-106.

On May 25, 2018, the ALJ issued a written decision finding Plaintiff was not disabled. T. at 37-48.  Plaintiff sought review of the ALJ's decision to the Appeals Council.  However, on January 15, 2019, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner.  T. at 1-4.  On August 12, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision after obtaining an extension of time to do so.  (Dkt. No. 1.)  Pursuant to General Order 18, each party

---

[1]  The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.

submitted supporting briefs which this Court treats as competing motions for judgment on the pleadings.  (Dkt. Nos. 13, 14.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.  Standard for Benefits[2]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[2]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

### C.    Standards for ALJ Evaluation of Opinion Evidence

In making a disability determination, the ALJ weighs all the evidence of record and

carefully considers medical source opinions about any issue.  SSR 96-5p, 1996 WL 374183, at

*2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical

issues," but are "administrative findings."  The responsibility for determining these issues

belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include

whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's Residual

Functional Capacity ("RFC"); how the vocational factors apply; and whether the plaintiff is

"disabled" under the Act.  *Id.*

In evaluating medical opinions on issues reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules being applied and the weight being accorded to the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

## D.    Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term. SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[3]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective

---

[3]  The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[4]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities;  (2) location, duration, frequency, and intensity of claimant's symptoms;  (3) precipitating and aggravating factors;  (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms;  (5) other treatment received to relieve symptoms;  (6) any measures taken by the claimant to relieve symptoms; and  (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a specific relevant factor does not undermine

---

[4]  The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

the ALJ's assessment if there is substantial evidence supporting the determination.  *Id.  See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).   "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S DECISION

The ALJ's decision followed the Social Security Administration's ("SSA") five-step sequential evaluation process for determining whether an adult is disabled. *See* 20 C.F.R. § 416.920(a).  After finding Plaintiff met the insured status requirements through December 31, 2020, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of May 17, 2016.  T. at 39.  At step two, ALJ found Plaintiff's fibromyalgia, Charcot-Marie-Tooth disease, essential tremor, and osteoarthritis to be severe impairments.  *Id*.  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in 20 C.F.R. § 404, Subpart P, App. 1.  T at. 40-41.  Then the ALJ found, based on the above-stated impairments, Plaintiff had the residual functional capacity ("RFC") to

> . . . lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk for six hours in an eight-hour day.  She can frequently balance and stoop; occasionally kneel, crouch, climb ramps, climb stairs, and operate foot controls; and never crawl, or climb ladders, ropes, or scaffolds.  The claimant can have no exposure to vibrations or workplace hazards, including unprotected heights and moving mechanical parts.  She can frequently handle, finger, and feel with her non-dominant left hand.

T. at 41.

In making her RFC determination, the ALJ considered medical records and opinion evidence in accordance with 20 C.F.R. 404.1529, SSR 16-3p, and 20 C.F.R. 404.1527.  *Id*.  As

relevant here, the ALJ considered the opinions of Plaintiff's treating physicians Michael

Picciano, M.D. ("Dr. Picciano"), and Hassan Shukri, M.D. ("Dr. Shukri"), and consultative

examiner Kalyani Ganesh, M.D. ("Dr. Ganesh").  T. at 44-46.

Given Plaintiff's RFC, the ALJ concluded she was not disabled because there were

significant numbers of jobs in the national economy she could perform.  T. at 47.  Specifically,

the ALJ noted the vocational expert testified someone of Plaintiff's "age, education, work

experience, and residual functional capacity" could perform past relevant work as a project

manager, and relevant work as a callout operator or surveillance system monitor.  *Id.*  The ALJ

concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since

May 17, 2016, the date the alleged disability began.  T. at 48.

## IV.  RELEVANT MEDICAL RECORDS AND OPINION EVIDENCE

### A.    Hassan Shukri, M.D.

Plaintiff underwent an initial neurological evaluation with treating nurse practitioner

("NP") Rose Soto on April 1, 2016.  T. at 282.  The treatment note was countersigned by Dr.

Shukri.  *Id.*  Her primary complaints were body soreness due to fibromyalgia and worsening

tremors affecting both hands.  *Id.*  Plaintiff had a normal gait and full strength in the upper and

lower extremities, although benign bilateral hand tremors were observed.  T. at 283.  Plaintiff

was fully awake, alert, and well orientated, and her coordination was normal.  *Id.*  Plaintiff

demonstrated mild cogwheel rigidity in her left elbow, dystonic movement in her neck while

turning her head, and moderately decreased sensation to vibration in her feet.  *Id.*  NP Soto

ordered an MRI of the brain and cervical spine and an EMG/nerve conduction study of the upper

and lower extremities.  T. at 284.  These studies were normal except for a small herniation

without impingement or stenosis at the C5-C6 level in Plaintiff's neck.  T. at 285-287.  NP Soto

and Dr. Shukri concluded most of Plaintiff's symptoms were probably from a cerebral palsy which affected her left arm and leg.  T. at 285.  It was noted this will get worse with age and it will be difficult for Plaintiff to do any job.  *Id.*  Plaintiff was encouraged to do aqua therapy, her medications were increased, and a follow up appointment was made.  *Id.*

In August 2016, Plaintiff followed up with NP Soto.  T. at 347.  Plaintiff again exhibited full strength in her upper and lower extremities, and she had a normal gait and no difficulties with heel, toe, and tandem walking.  T. at 346-47.  A bilateral hand tremor was present with the left tremor greater than the right.  *Id.*  NP Soto and Dr. Shukri referred Plaintiff for a second opinion regarding the tremors.  *Id.*

In October 2016, Plaintiff followed up again with Dr. Shukri.  T. at 348.  He found Plaintiff had mild increased tone in bilateral lower extremities with left more than right.  T. at 349.  He noted there was no incoordination, and sensation was normal to pinprick, vibration, and cortical modality.  *Id.*  He stated Plaintiff had a spastic gait, no neck or spinal tenderness was present, and her cervical range of motion was full.  *Id.*  Dr. Shukri concluded Plaintiff was permanently totally disabled as of May 16, 2016, and noted she was scheduled for a second opinion at Strong Memorial Hospital regarding her tremors.  *Id.*

In February 2017, Plaintiff again treated with Dr. Shukri.  T. at 351.  He noted she had been diagnosed with Charcot-Marie-Tooth disease and essential tremor.  *Id.*  On exam, her motor and tone were normal in all four extremities.  T. at 352.  She had no tremor or involuntary movement, her muscles had good consistency in all four limbs, there was no generalized atrophy or fasciculation, and strength was normal in all four limbs.  *Id.*  Her gait was normal, and she had no difficulty with toe, heel, or tandem walking.  *Id.*  Dr. Shukri noted Plaintiff was doing fairly

well with the medication propranolol.  *Id.*  He concluded Plaintiff was permanently and totally disabled since May 16, 2016.  T. at 351.

In May 2017, Plaintiff treated with Dr. Shukri at the request of her attorney after being denied for long term disability.  T. at 354.  Dr. Shukri concluded Plaintiff has several chronic neurological diseases, each of which could be enough to give her disability.  T. at 356.  On exam, Plaintiff exhibited a positional tremor, left more than right, and she had spasticity in both lower extremities, left more than right.  T. at 355.  He concluded her familial tremor would make it impossible for her to do any fine hand movement.  *Id.*  In August 2017, Plaintiff saw Dr. Shukri again and he noted no major change in symptoms.  T. at 357.  In January 2018, Dr. Shukri noted Plaintiff had mild weakness in the left extremities, but no incoordination on heel-to-shin or finger-to-nose maneuvers.  T. at 359.  She exhibited no neck or spinal tenderness and her neck range of motion was full.  *Id.*  Dr. Shukri encouraged Plaintiff to continue conservative treatment of medication and home exercise.  *Id.*

### B.   Arthritis Health Associates

On March 14, 2016, Plaintiff was evaluated by Linda Warnowicz, M.D., of Arthritis Health Associates for generalized body pains.  T. at 294.  She exhibited fifteen out of eighteen fibromyalgia tender points, but all joints were found non-tender and non-swollen.  T. at 296-297.  Plaintiff experienced general morning stiffness which resulted in loss of appetite, fatigue, headaches, and dry mouth.  T. at 294.  Plaintiff's pain severity level was a one out of ten.  *Id.*  Concerned that she may have an underlying neurologic disorder, Dr. Warnowicz suggested Plaintiff have a neurology evaluation and continue her current medications.  T. at 297.

On May 20, 2016, Plaintiff followed up with Dr. Warnowicz.  T. at 288.  At that time, she displayed twelve out of eighteen fibromyalgia tender points with a pain severity level of four

out of ten.  T. at 288-291.  Her joints were again found to be non-tender and non-swollen.  T. at 289.  Dr. Warnowicz recommended continued medication and continued treatment with Dr. Shukri for hand tremors.  *Id.*

From September 2016, to January 2018, plaintiff routinely sought care from various providers at Arthritis Health Associates for similar generalized body pains. T. at 383-404.  Lumbar and sacroiliac joint x-rays in September of 2016 were unremarkable.  T. at 405-406.  In November 2016, Plaintiff's musculoskeletal exam was normal without any tenderness or limitation on range of motion in her shoulders, elbows, hands, and knees.  T. at 396-97.  Plaintiff was encouraged to stretch and swim.  T. at 397.  In March and July of 2017, exams of Plaintiff's extremities and joints were normal, although she did exhibit a tremor.  T. at 388, 392.  In January 2018, Plaintiff exhibited bilateral elbow pain on exam, but her range of motion was normal in both arms.  T. at 384.  All of her joints, except for her elbows, were found to be non-tender and non-swollen.  *Id.*  Her recent laboratory blood testing was generally normal.  T. at 383.  Physician Assistant ("PA") Lynne McIlvain recommended Plaintiff continue stretching, icing, and using tennis elbow straps.  T. at 385.

### C.    Upstate Comprehensive Pain Medicine

Plaintiff also received pain related treatment at Upstate Comprehensive Pain Medicine during the relevant time period.  In September of 2017, Plaintiff's musculoskeletal exam revealed tenderness in all joints, but she had full and equal strength in both lower extremities and she sat without discomfort.  T. at 369.  Reflexes and sensation in both lower extremities were normal.  *Id.*  The exam was unchanged in November of 2017.  T. at 426.  In July of 2018, Plaintiff exhibited tenderness in her back, but her exam was normal.  T. at 28.

### D.    University of Rochester Movement Disorder Clinic

In November of 2016, Plaintiff was evaluated at the University of Rochester Movement Disorder Clinic for her hand tremor.  T. at 479-481.  On exam, Plaintiff's muscle tone and bulk were normal in all extremities.  T. at 480.  She had full strength in all extremities and good range of motion, although she exhibited a hand tremor, more on the left than on the right.  *Id.*  Her finger coordination testing was normal; and her gait was stable with normal base, stride length, and arm swing.  *Id.*  She was diagnosed with an essential tremor and medication was recommended.  *Id.*

### E.    CNY Family Care/Michael Picciano, M.D.

Plaintiff received primary care for a variety of health reasons from various providers at CNY Family Care including Dr. Picciano.  In December of 2015, she complained of body aches.  T. at 325.  On exam, she exhibited fibromyalgia trigger points in her upper back; and she had tenderness in her mid-paravertebral muscles.  T. at 326.  PA Ruth McDonald ordered blood work and medications while noting a possible diagnosis of fibromyalgia.  T. at 327.  In February of 2016, PA McDonald noted tenderness on exam along the costal area of Plaintiff's rib cage, but no other significant findings.  T. at 322.  In April of 2016, NP Kristen Mullally noted multiple tender points in Plaintiff's neck, low back, hips, knees, and wrists upon palpation, but Plaintiff had full range of motion.  T. at 313.

In January of 2017, Plaintiff complained of pain in her back, knees, and joints.  T. at 474.  Her exam was normal, however, Dr. Picciano assessed her with fibromyalgia and essential tremor.  T. at 474-75.  In May of 2017, PA McDonald noted a mild tremor, but the exam was otherwise unremarkable.  T. at 460.  PA McDonald also treated Plaintiff for a painful right middle finger in October of 2017, but an x-ray was normal.  T. at 433-35.  In December of 2017,

NP Rachael Cavelli treated Plaintiff for left ankle pain.  T. at 421.  On exam, Plaintiff had a normal gait, and full range of motion of both ankles, but her left foot was tender.  T. at 422.  The exam was otherwise benign, and an x-ray of the left ankle was normal.  T. at 420, 422.

On February 13, 2018, Dr. Picciano examined Plaintiff for her chronic pain and to complete disability paperwork.  T. at 410.  For the objective exam, Dr. Picciano noted only that Plaintiff appeared well, and that she was fully alert and oriented and had no signs of acute distress.  T. at 411.  Dr. Picciano completed a source statement that day opining Plaintiff's symptoms were severe enough to interfere with her attention and concentration for more than 30-percent of an eight-hour workday, and she could only walk one block without severe pain.  T. 407-409.  He indicated Plaintiff could sit, stand, or walk for less than two-hours each day; she needed to take a 5-minute break to walk around every 10 minutes and take a 10 minute break every hour to lie down; she could occasionally lift less than 10 pounds; she could never look down and rarely stoop or climb stairs; and she could never twist, crouch or climb ladders.  *Id.* Additionally, Dr. Picciano opined Plaintiff could only perform gross hand manipulation for 20 percent of the day, fine manipulation for 10 percent of the day, and reaching for 10 percent of the day with her right hand.  *Id.*  He stated Plaintiff could never perform any of these activities with her left hand.  *Id.*  He concluded Plaintiff has been unable to work since May 2016.  T. at 410.

### F.    Kalyani Ganesh, M.D.

In July 22, 2016, Plaintiff underwent a consultative examination with Kalyani Ganesh, M.D.  T. at 339.  Dr. Ganesh noted plaintiff appeared to be in no acute distress.  T. at 341.  Her gait and stance were normal.  *Id.*  She could walk on heels and toes with no difficulty.  *Id.*  She needed no help changing for the exam or getting on and off exam table.  *Id.*  Her musculoskeletal exam was normal with full range of motion in her spine and extremities, and her joints were non-

tender and non-swollen.  T. at 342.  Regarding her fibromyalgia symptoms, she exhibited tender

points bilaterally in her trapezius and second ribs, and one control point on her mid-forehead.  *Id.*

Her hand and finger dexterity were intact, and no tremors were noted.  *Id.*  Her handwriting was

legible, clear, and inconsistent with any tremors, and her grip strength was full and equal

bilaterally.  *Id.*  Dr. Ganesh concluded Plaintiffs overall movements were very brisk and she had

no noted difficulties.  *Id.*

## V.     THE PARTIES' CONTENTIONS

Plaintiff's primary argument is the ALJ erred in declining to give controlling weight to

the opinions of the treating physicians and adopting her own subjective medical opinion when

determining Plaintiff's RFC. (Dkt. No. 13.)  Specifically, Plaintiff argues the ALJ did not

identify any inconsistencies between the opinions of the treating physicians and the medical

evidence.  (*Id.* at 13.)  Defendant, on the other hand, asserts substantial evidence supports both

the ALJ's decision when weighing the opinion evidence and in evaluating Plaintiff's subjective

symptoms.  (Dkt. No. 14.)

## VI.    ANALYSIS

### A.     Opinion Evidence and the RFC Determination

A claimant's RFC reflects what he or she "can still do despite his or her limitations."

*Desmond v. Astrue,* No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012)

(quoting *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999)).  To determine a claimant's RFC, "the

ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain

and other limitations that could interfere with work activities on a regular and continuing basis."

*Id.* (citing 20 C.F.R. § 404.1545(a)); see also 20 C.F.R. § 416.945(a).  The ALJ assesses RFC

"based on all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a)(3).  The RFC

assessment does not have to "perfectly correspond" with any of the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). The Court upholds an RFC finding "when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5 (citation omitted).

In terms of weighing opinion evidence, the Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 416.927(c). "Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek,* 802 F.3d at 375 (quoting *Selian v. Astrue,* 708 F.3d 409, 418 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek,* 802 F.3d at 375 (quoting *Burgess,* 537 F.3d at 129). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* (quoting *Burgess,* 537 F.3d at 129-30). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, []he is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc.*

*Sec.,* No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue,* 512 F. App'x 67, 70 (2d Cir. 2013)), report-recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017).

In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  *See Frey ex rel. A.O. v. Astrue,* 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin,* 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  See 20 C.F.R. § 416.927(c)(1)-(6).

### B.    The ALJ's Determination

In the RFC, the ALJ limited Plaintiff to light exertional work except she cannot crawl or climb ladders, ropes, or scaffolds.  T. at 44.  Additionally, Plaintiff cannot be exposed to workplace hazards such as unprotected heights, moving mechanical parts, or sudden vibrations. *Id.*  In reaching the RFC determination, the ALJ assigned partial weight to the opinions of both treating physicians, Dr. Shukri and Dr. Picciano, because they significantly deviated from the objective evidence.  T. at 44-45.  Both opinions suggested it would be impossible for her to do

any fine hand manipulations which was inconsistent with the objective medical findings and her own reported activities. *Id*. The ALJ specifically noted the medical records which show Plaintiff had mild right-sided tremors, which was her dominant hand, and mild to moderate left-sided tremors which did not suggest a total inability to engage in fine manipulation. *Id.; see also* T. at 283, 342, 346-47, 474-75, 480. However, she reported she could drive, dress herself, bath herself, prepare meals, do chores, and use a cell phone (T. at 234-238) which are all activities requiring fine manipulation. T. at 45. The ALJ also noted undefined and conclusory terms were used giving little utility for calculating Plaintiff's RFC. T. at 44.

The ALJ gave little weight to consultative examiner Dr. Ganesh's opinion because the longitudinal evidence indicated some functional limitations were needed. T. at 45-46. The ALJ gave more weight to the treating physicians' opinions although they overstated the limitations, because they "were more consistent with a preponderance of the evidence than no limitations at all." T. at 46.

The ALJ determined the RFC was supported by the findings of generally full motor strength in Plaintiff's extremities and intermittent findings of lumbar or cervical pain. *Id.* The widespread body pain and her neuropathic symptoms supported the exertional, postural, manipulative, and environmental limitations in the RFC. *Id.* The ALJ also found the Plaintiff's reported activities and her mild to moderate hand tremor diagnosis supported the manipulative and exertional limitations in the RFC. *Id.*

### C.    Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."
*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d
45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must
consider a claimant's physical abilities, mental abilities, symptomology, including pain and other
limitations which could interfere with work activities on a regular and continuing basis."  *Id.*
(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by
an individual's response to demands of work . . . must be reflected in the RFC assessment.'"
*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,
2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth
with sufficient specificity to enable [the Court] to decide whether the determination is supported
by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

> 1.   Opinion of Dr. Shukri

Plaintiff argues the ALJ substituted her judgment for medical opinions on Plaintiff's
ability to work consistently.  (Dkt. No. 13 at 12.)  In doing so, Plaintiff argues the ALJ deviated
from the treating physician rule and did not consider all the required factors for evaluating
medical opinions.[5]  *Id.*  The Court concludes otherwise.

The Second Circuit has held "[w]here an ALJ's reasoning and adherence to the
Regulations is clear, she is not required to explicitly go through each and every factor of the
Regulation."  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Here, the ALJ meaningfully
addressed most of the factors set forth in 20 C.F.R. § 404.1529(c)(3).  The ALJ discussed
Plaintiff's daily activities such as driving a vehicle, traveling alone, preparing meals, using

---

[5]  Plaintiff later argues these same factors were not considered when the ALJ evaluated
Plaintiff's subjective symptoms. The Court finds this argument unpersuasive for similar reasons
as set forth below.

technology, shopping, taking care of her dog, and performing household chores.  T. at 40, 45; *see also* T. at 95-98, 235-36.  She discussed the location, duration, frequency, and intensity of Plaintiff's symptoms.  T. at 42-45.  She also reviewed Plaintiff's medications, response, and reported side effects of the medication, and she noted the physicians' titles and specialties.  *Id.*  It is clear after a review of the record evidence that the relevant factors were considered and did not need to be explicitly recited.

Plaintiff also argues the ALJ vaguely rejected Dr. Shukri's opinion and did not have any opinion evidence to support her key findings in determining Plaintiff's RFC.  (Dkt. No. 13 at 18.)  The Court, however, concludes substantial evidence supports the RFC.

First, the ALJ's decision indicates a thorough review of the record with analysis supported by the evidence.  T. at 44-46.  For example, the ALJ explains at various times how she determined the suggested hand manipulation limitations found by Dr. Shukri to be inconsistent with the medical evidence and other evidence of record.  T. at 45, 46.  Specifically, the ALJ indicated the record failed to support the conclusion of fine hand manipulation being impossible, with a diagnosis of only a mild tremor in the dominant right hand and a mild to moderate tremor in the left hand.  *Id.; see also* T. at 283, 342, 346-47, 474-75, 480; 20 C.F.R. §§ 404.1527(3)(4), 404.1529(c)(4); *Ladd v. Comm'r of Soc. Sec.,* No. 5:13–CV–0236, 2014 WL 2779167, at *2 (N.D.N.Y. June 19, 2014) (finding that the ALJ did not err by requiring objective evidence of the claimant's fibromyalgia, but, rather, properly discounted the treating physician's opinion as to the claimant's impaired mobility because it was inconsistent with her own treatment notes).

Further, the ALJ indicated Plaintiff engaged in multiple activities which require fine hand manipulations.  T. at 45, 46.  Activities include driving a vehicle, dressing, bathing, preparing

meals, doing chores, and using a cellphone, all of which is inconsistent with the conclusion of fine hand manipulation being impossible. *Id.; see Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (The ALJ did not err in declining to afford treating physician's opinion controlling weight because his opinion was inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and *reported activities of daily living.*) (emphasis added).

Finally, Plaintiff argues the ALJ is duty-bound to obtain clarification and additional information from treating physicians when insufficiencies are found in the record. (Dkt. No. 13 at 18.)  The Court likewise finds this argument unpersuasive.

Where there are gaps in the record the court has remanded for further development of the evidence. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). "Remand is particularly appropriate where . . . we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" *Id*. (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).  In other words, an ALJ is only required to pursue further record development when the evidence is inadequate for the Commissioner to determine whether an individual is disabled. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). That is not the case here.  The ALJ possessed a complete administrative record with no gaps in medical history and treatment. *See generally* T. at 281-493.  The medical evidence includes records from Plaintiff's treating neurologist spanning the years 2016 through 2018 (T. at 281-287, 345-363); records from her treating primary care providers from 2011 through 2018 (301-338, 407-493); records from her treating arthritis specialists for 2016 through 2018 (T. at 288-300, 383-406); and records from the pain clinic where she sought treatment in 2017 and 2018 (T. at 27-29, 364-382).  Because the ALJ relied on Plaintiff's extensive medical records and other

evidence of record, it was not necessary for the ALJ to seek additional medical information regarding Plaintiff's RFC.  *See Rosa*, 168 F.3d at 79 n.5.  Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim. *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).  In this case, the ALJ had extensive evidence depicting Plaintiff's physical functioning.  The ALJ correctly relied on this evidence in determining Plaintiff could perform less than the full range of light work.

2.      Opinion of Dr. Picciano

Plaintiff argues the ALJ's conclusory paragraph fails to identify any actual inconsistencies between Dr. Picciano's opinion of limitations and the medical treatment records and fails to properly address the *Burgess* factors.  (Dkt. No. 13 at 12.)  For the following reasons, the Court again disagrees.

As explained above, when examined by her neurologist and others, Plaintiff consistently displayed mild tremor symptoms in her dominant hand, and mild to moderate symptoms in her non-dominant hand.  T. at 283, 342, 346-48, 352, 385, 460, 480.  Upper extremity exams showed full strength bilaterally, good muscle consistency, and non-tender and non-swollen joints.  T. at 296-97, 342, 346-47, 352, 369, 388, 392, 397-98, 480.  These mild symptoms do not support the conclusion that Plaintiff could use her left arm zero percent of the day and use her right arm for only ten to twenty percent of the day as opined by Dr. Picciano.  T. at 409.  Plaintiff also displayed full or only slightly decreased motor functions in her upper and lower extremities; she generally had a normal gait; and she had intermittent findings of neck and back pain, but her range of motion was good.  T. at 45, 283, 342, 346-47, 352, 369, 388, 396-97, 422, 426, 480. These findings conflict with Dr. Picciano's opinion that Plaintiff could never look down and

could only rarely stoop or climb stairs.  T. at 409.  Further, Dr. Picciano's opinions are not supported by the evidence of Plaintiff's daily activities, which include driving a vehicle, dressing, bathing, preparing meals, doing chores, taking care of her dog, and using a cellphone. T. at 45, 95-98, 234-238.  Plaintiff's function report wherein she indicates she can reach and use her hands, although it was difficult "sometimes," provides support that she can using her left arm more than zero percent and her right arm more than ten to twenty percent.  T. at 238.

The ALJ also relied on unmarkable brain and spine MRIs and EMG/nerve studies as evidence to support the RFC.  T. at 42, 285-287.  The ALJ explained that Plaintiff's medical examinations showed only slightly reduced motor strength and only intermittent findings of pain in her cervical spine.  T. at 44, 283, 342, 349, 359.  The ALJ cited to specific record evidence documenting mild to moderate tremors but minimal mild functional impairments attendant to those tremors.  T. at 43.  For example, Plaintiff had minimal impairment in drawing and writing (T. at 480); intact hand and finger dexterity (T. at 342); and grip strength 5/5 bilaterally.  *Id.*

The ALJ also relies on the consultative report of Dr. Ganesh.  T. at 45.  Dr. Ganesh concluded Plaintiff's overall movements were brisk and no physical difficulties were found.  T. at 342.  Although the ALJ did not give Dr. Ganesh's opinion significant weight, Dr. Ganesh's findings on exam do not support the extreme limitations opined by Dr. Picciano and Dr. Shukri. T. at 45, 341-42.  *See, e.g., Gladle v. Astrue,* No. 7:05-CV-797 (NAM/GJD), 2008 WL 4411655, at *5 (N.D.N.Y. Sept. 23, 2008) (finding ALJ properly discounted opinion of treating physician where it was inconsistent with treatment records and objective findings of consultative examiner); *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756 at *16 (W.D.N.Y. Feb. 25, 2015) (ALJ properly discounted treating physician opinion where it assessed limitations that

were inconsistent with findings contained in the treatment records and with admissions claimant had made concerning his activities of daily living).

In summary, a "searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed." *Estrella*, 925 F. 3d at 96. The ALJ's decision demonstrates adequate consideration of the regulatory factors in weighing the opinions of record and affording some weight to Plaintiff's treating providers' opinions. *See* 20 C.F.R. § 404.1527(c)(2).

### D.    Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Symptom Description

Plaintiff argues the ALJ failed to evaluate Plaintiff's subjective statements pursuant to procedures set out in 20 C.F.R. § 404.1529 regarding Plaintiff's subjective symptom allegations. (Dkt. No. 13 at 23.) Specifically, Plaintiff asserts the ALJ did not provide a rationale for discounting the allegations made. For the reasons that follow, the Court finds this argument unpersuasive.

Similar to the above reasoning, the ALJ found Plaintiff's allegations of debilitating pain inconsistent with examination findings and reported symptoms. T. at 44-46. The ALJ points to examinations which show slightly reduced motor strength and only intermittent findings of pain in her cervical spine. T. at 44, 283, 342, 349, 359. Additionally, as noted above, the ALJ cited evidence documenting mild to moderate tremors but minimal to mild functional impairments associated with those tremors. T. at 43, 296-97, 342, 346-47, 352, 369, 388, 392, 396-97, 480. For example, Dr. Ruth Schneider at the Movement Disorder Clinic noted mild to moderate tremors but with minimal impairment in drawing and writing. T. at 480. Dr. Ganesh found Plaintiff had intact hand and finger dexterity, and noted Plaintiff's handwriting was legible, clear, and inconsistent with tremors. T. at 342. Plaintiff's grip strength was equal and full bilaterally.

*Id.* Dr. Schukri noted Plaintiff's motor strength was normal in all extremities; and she had a normal gait, and only mild loss of sensation to vibration of feet. T. at 469.

The ALJ also found Plaintiff's reported activities to be inconsistent with the alleged manipulative limitations. T. at 40. Although the ALJ acknowledged Plaintiff's difficulties with zippers and buttons on clothes, the ALJ found the allegations inconsistent with the rest of her reported abilities to vacuum, dust, wash dishes, shop for groceries, use a cellphone, and exhibit legible handwriting. T. at 95-98, 235-237, 340, 480. *See Donnelly v. Barnhart,* 105 F. App'x 306, 308 (2d Cir. 2004) (ALJ properly discounted Plaintiff's reported symptoms based on statements that claimant performed a variety of daily activities including cooking dinner, folding clothes, and sewing). The ALJ reasonably concluded Plaintiff's allegations of limitations were inconsistent with the evidence presented.

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ appropriately evaluated the Plaintiff's report of symptoms and the conflicting medical evidence, and made an RFC finding consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).

Considering the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and her activities of daily living, this Court concludes the RFC determination was supported by substantial evidence. The ALJ then relied upon this RFC

determination in her questioning of the VE, and in her ultimate determination that Plaintiff could perform her prior employment, and other jobs available in significant numbers in the national economy.  Therefore, these findings are also supported by substantial evidence.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (holding ALJ may rely on a VE's testimony regarding the availability of work if the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations).

## VII.   CONCLUSION

For the reasons stated above, the Court finds the ALJ's determination of Plaintiff's RFC, the weighing of medical opinions, and the assessment of Plaintiff's subjective symptoms is appropriate.  The ALJ's conclusions are supported by substantial evidence and the correct legal standards were applied.  Remand is therefore not required on these bases.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED**.

Dated: September 29, 2020
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge